Good morning. I'm Paul Eaglin from Fairbanks. Welcome to Fairbanks, and thank you for hearing Ms. Haggerty's appeal. This, as you know, is a Social Security appeal, and it's one that ended by decision at step two of the five-step sequential evaluation. That is, the administrative law judge determined that Ms. Haggerty had no impairments that were severe that warranted continuation of the five-step sequential evaluation. At step two, as you are familiar with, at that stage, it's supposed to be merely a threshold method of determining the serious claims from those that are not so serious. Obviously, Ms. Haggerty regards hers as serious, and we believe that it's well-documented in that respect. Dr. Michel, Paul Michel, for example, was the consultative examiner retained by the agency, issued a report that's there at about record page 280 or 290, and in that one, he concluded in a long-term basis that Ms. Haggerty's prognosis was not very favorable, especially with respect to the ability to maintain what is called the CCP or CPP, concentration, persistence, and pace. Help me with this, counsel. As I understand it, Dr. – do you say Michel? Is that the way you say it? Michel, Paul Michel. Okay. As I understood it, his conclusions weren't – there was no normal mental status evaluation like Dr. Burgess had performed, and apparently the report was based primarily on the claimant's self-report, and it was inconsistent with her normal activities, which indicated greater functional ability and capability than she alleged. Or is that incorrect? That was what the judge said about Dr. Michel. Right. I understand that, but I'm just looking at the record itself. Right. It seemed to me there was evidence, substantial evidence, to support that. Why is that wrong? Why do we have to give more credit to Dr. Michel? One reason, Your Honor, would be is that Dr. Michel actually encountered Ms. Haggerty. He's an examining physician, number one. Number two, with respect to the comment that – or the criticism by the judge that Dr. Michel relied on or gave any regard to Ms. Haggerty's self-report, throughout my briefing, and I believe that the commissioner also in his briefing contests about what's called Social Security Ruling 96-7P. You'll see on the first page of that, it remarks that the symptoms by a person, by an individual, are part of the signs and symptoms that are to be taken into account as part of the process of assessing records properly. I don't question that. I guess what we're looking at is the relative weight assigned by the ALJ to the two reports. He gave less weight to Dr. Michel's conclusions than to Dr. Burgess's opinion and gave reasons for that, including the fact that it was based upon primarily self-reporting and that what your client was doing in terms of personal life was at odds with the claims made about what was going on. But the way to put that into context, however, and to harmonize that, which is part of what the ALJ should be doing, is also to pay regard to what Dr. O'Connor said. Because, if you'll notice, hers is the most comprehensive report. It follows right after Dr. Michel's in the record. And she's describing this years-long span. Actually, she takes it back to the childhood of Ms. Haggerty, and it appears that Ms. Haggerty has one of the more complex presentations of post-traumatic stress disorder. And at one point, you'll notice that Dr. O'Connor, at page record 292 of 351, in the first full paragraph, meaning Dr. O'Connor, refers to a work by Dr. Judith Herman on trauma and recovery, which has to do with the discussion of the complex presentations of PTSD, not what would be the normal presentations that psychologists and psychotherapists and so forth would encounter. I think that's what harmonizes Dr. Michel with Dr. Burgess and would help to explain why Ms. Haggerty could appear to be active. I mean, after all, part of what she has at times is this mania, this manic presentation. That, I think, could help to explain what concerns you, Judge Smith. Well, as I understand it from ER 27, the ALJ did give Dr. O'Connor's opinion significant weight. I don't know that it correlated back to Dr. Michel's necessarily, but the reality is the global assessment functioning score, the ALJ did give some significant weight to that. Is that incorrect? With respect to Dr. O'Connor, he says, I give significant weight to Dr. O'Connor's opinion regarding her prognosis, but little weight to the GAF score. Well, the GAF score, of course, we go back and forth in the briefing about that. It's a way of quickly capturing or summarizing in a quick expression the doctor's evaluation. But he gives significant weight to her prognosis, but Dr. O'Connor's prognosis for Ms. Haggerty is not a good one. So that puzzles me that he could give what he says as significant weight, and yet Dr. O'Connor, I mean, if you look at that report, she is not pointing towards a hopeful future for Ms. Haggerty. So that's a puzzle to me. And to get back to the step two criterion of the Bowens versus Yuckert, just a threshold de minimis showing, I think we have it here. We have a threshold de minimis showing that she has at least some severe presentation of post-traumatic stress disorder and a number of other things, but apparently the major one that needs to be addressed, if she is to improve and to become functional on an ongoing basis, would be that post-traumatic stress disorder. I believe that we have satisfied the step two threshold severity criterion. Would I be able to save the remainder of my time? Yes, of course. Okay. Thank you. Good morning. My name is Lisa Wolf. I represent the Commissioner for Social Security. This is a step two decision, as Mr. Eaglin has identified. This is admittedly a difficult case. We task the administrative law judges with resolving and reviewing the medical evidence, and it varies over time in this case. We have an individual who had prior heavy substance abuse. In the record, there is a prior ALJ decision in which the prior ALJ found that her substance abuse was material. Fortunately, Ms. Haggerty overcame her heavy substance abuse, and she was able to receive treatment with Dr. O'Connor and Dr. Burgess. I found it notable that Dr. Burgess had commented that he had long suspected that in 2004, Dr. Burgess noted that he had long suspected that Ms. Haggerty's substance abuse had confounded her mental picture, and he no longer regarded her as disabled in 2004, and that's at 310 in the excerpts of record. So we task these ALJs with resolving this conflicting medical evidence, and there is conflicting medical evidence here. The ALJ relied on the opinions from Dr. Burgess, who said that she was no longer disabled in 2004. He also looked at the non-examining evidence from Dr. Fagan, and he also looked at the claimant's activities of daily living, which did not comport with the alleged restrictions that she stated. And if you look at the picture, it is that she had improved. By the time of the hearing in June of 2007, she told the administrative law judge that she had not had mental health treatment in six months, and that's at page 38 in the excerpts of record. So if we look at the medical evidence, the ALJ reasonably resolved the conflicts and found that there were no severe mental impairments here. As we stated in the briefs and just briefly, GAAP scores, which are a global assessment of functioning, are snapshots in time, and under the federal regulations, they do not correlate with disability. I think that's pretty clear in the case law. And a GAAP score relies heavily on plaintiff's subjective allegations, which is a finding not challenged here on appeal. So if we look at the medical evidence, we look at the varying diagnoses. I had to chart this out the last few days. She has bipolar. She doesn't have bipolar. Dr. Burgess thinks she has ADHD. Dr. Michels finds it appalling that she's on amphetamines. She has no attention deficit disorder. Her anxiety symptoms have lessened. Even Dr. O'Connor noted that she was becoming post-substance abuse. She was becoming self-reliant. She was having greater functional capacity, and she was hoping to be able to work full-time. During this time period, she completed an EMT course, and she volunteered at a fire department. She maintained a relationship with her partner. She did somewhat normal activities of daily living, shopping, driving, health care. So when we look at the evidence from a longitudinal perspective, it shows improvement post-substance abuse recovery time frame. But ALJ examined all the relevant medical opinion source evidence and drew these reasonable conclusions, and Ms. Hagerty's not met her burden to show that she had severe mental impairments. Okay. Thank you, Mr. Eaglin. I realize that there's a great attention or perhaps more attention on Dr. Burgess. He's a psychiatrist there. Dr. Burgess and Dr. O'Connor at that time worked together. But I would like to point the court's attention to the fact that Dr. Burgess pointed to Dr. O'Connor as the main treater for Ms. Hagerty, and that's reflected in the record here because you will see in the record the most comprehensive description of the complexity of Ms. Hagerty's post-traumatic stress disorder is that that report by Dr. O'Connor, her signature of that is at record 293, and it's about 12 pages, so it probably starts at about 280 to 293. Going back to the period when Dr. O'Connor was not even treating her because Ms. Hagerty's post-traumatic stress disorder traces to her childhood with repeated abuse by her mother and her father and a number of instances that happened, and this is carried forward and so she tries to give the complexity of that in that report there while also talking about what she, Dr. O'Connor, did to try to address some of that while also trying to get a better handle on it because it appears to me that this is one of the most complex presentations of PTSD that I've ever seen in one of these types of cases, and it seems like she was struggling with it and all of the others were struggling with it as well. Thank you. Thank you. Thank you both for your helpful arguments in this case. Hagerty v. Astor is now submitted for decision. Thank you.
judges: Goodwin, Fletcher, Smith